IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| YVONNE CHAVEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | EP-15-CV-00068-KC |
| | § | |
| DICK ABER, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Defendants' First Amended Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof ("Motion"), ECF No. 8, in the above-captioned case (the "Case"). For the following reasons, the Motion is **DENIED**.

## I.    BACKGROUND

Unless otherwise stated, the following facts are taken from Plaintiffs' Complaint ("Complaint"), ECF No. 1.

The Case arises from allegations of housing discrimination on the basis of disability. *Id.* at 1.[1] Specifically, Plaintiffs seek damages stemming from Defendants' refusal to accommodate Plaintiff Yvonne Chavez's ("Chavez") minor son's ("M.C.") mental health disabilities by allowing Plaintiffs to keep a mixed-breed pit bull as an emotional support animal in their rented duplex. *Id.* at 2, 15-19.

---

[1] The Court's citations to documents filed in the Case refer to the page numbers superimposed upon them by the Court's electronic docketing system.

Chavez began renting a duplex apartment (the "Duplex") in El Paso, Texas in February 2006. *Id.* at 5. Defendant Fairview Court, LLC ("Fairview") held title to the Duplex at the time Chavez began renting. *Id.* at 4.[2] Defendant Dick Aber ("Aber") is "the owner, director and manager of Fairview." *Id.* at 3. Aber also owned and managed the Duplex, and was responsible for the oversight of the Duplex's day-to-day operations, including decision-making power on whether to grant requests for reasonable accommodations of disabilities. *Id.* at 4-5. The most recent lease between Chavez and Defendants ran from January 1, 2010, to December 31, 2012, had a "no pets" policy, and provided for a rent of $550.00 per month. *Id.* at 5; Residential Lease of Jan. 1, 2010 (the "January 1, 2010, Lease"), Compl. Ex. 1, ECF No. 1-3.[3]

In November 2011, while M.C. was receiving out-patient care at a local psychiatric hospital, M.C.'s psychiatrist, Dr. Gerardo Moreira ("Dr. Moreira"), recommended that M.C.'s treatment should include the use of an emotional support animal. Compl. 5. As a result, in June of 2012, Chavez adopted a three-month old mixed-breed pit bull ("Chato"). *Id.* At the time Chavez adopted Chato, other tenants in neighboring duplexes owned one or more dogs as well. *Id.* at 6. Chato largely remained inside the Duplex in order to promote interaction with M.C. *Id.* When Chato was outside, Chavez and M.C. supervised him in the Duplex's front yard. *Id.*

---

[2] Plaintiffs allege that though Fairview transferred title to the Duplex to Tom's Fairview Court, LLC ("Tom's Fairview") on August 5, 2013, Defendant Dick Aber, as manager of both Fairview and Tom's Fairview, filed a correction assumption deed on December 17, 2013, transferring the Duplex back to Fairview. Compl. 4.

[3] Plaintiffs have attached a number of evidentiary exhibits in support of their Complaint. *See* Compl. Exs. 1-17, ECF No. 1-3 to 1-19. In reviewing a Rule 12(b)(6) motion to dismiss, courts may consider the complaint as well as any documents attached to the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Lindgren v. Spears*, Civil Action No. H-10-1929, 2010 WL 5437270, at *1 (S.D. Tex. Dec. 27, 2010) (considering documents attached to complaint in consideration of motion to dismiss under Rule 12(b)(1)). Accordingly, the Court relies on Plaintiffs' attached evidentiary exhibits throughout this Order.

At an unspecified date prior to or in September 2012, Aber orally asked Chavez to remove Chato from the Duplex. *Id.* Chavez explained to Aber that Chato was an emotional support animal needed to alleviate M.C.'s disabilities, and requested an accommodation of the Duplex's "no pet" policy ("First Accommodation Request"). *See id.* Aber refused the accommodation request and again verbally asked Chavez to remove Chato from the premises. *Id.* On September 14, 2012, after Chavez did not remove Chato, Aber provided Chavez with a notice to vacate because Chavez was not permitted to have a dog at the Duplex. *Id.* at 7; Notice to Vacate ("First Notice to Vacate"), Compl. Ex. 2, ECF No. 1-4. By the First Notice to Vacate, Aber threatened to evict Chavez and have El Paso Animal Control Services remove Chato from the Duplex if Chavez did not remove the dog from the premises by September 20, 2012. *See* Compl. 7; First Notice to Vacate 2. Aber also attached to the First Notice to Vacate a copy of a news article about a death related to a pit bull attack. Compl. 7; First Notice to Vacate 3. The First Notice to Vacate was the first such notice that Chavez had received from Aber during her nearly six-year tenancy at the Duplex. Compl. 7.

After receiving the First Notice to Vacate, Chavez provided Aber with letters from Dr. Moreira and Cecilia Burgos, M.C.'s psychotherapist, in support of the First Accommodation Request. *Id.*; *see also* Letter from Gerardo Moreira to Hous. Auth. of El Paso (Aug. 15, 2012) ("Moreira Letter"), Compl. Ex. 3 at 2, ECF No. 1-5; Letter from Cecilia Burgos (Sept. 11, 2012) ("Burgos Letter"), Compl. Ex. 3 at 3, ECF No. 1-5. Both the Moreira Letter and the Burgos Letter (collectively, the "Support Letters") stated that M.C. would benefit from the presence of an emotional support animal. *See* Compl. 7; Support Letters. In response, Aber again verbally

denied Chavez's accommodation request, and reiterated that he would evict the family and call Animal Control Services if Chavez did not remove Chato from the premises.  *See* Compl. 7.

Fearing eviction, Chavez removed Chato from the Duplex on September 22, 2012.  *Id.* at 8.  Nonetheless, and despite informing Chavez that he would not proceed with the threatened eviction after Chato's removal, Aber filed an eviction complaint against Chavez on September 24, 2012.  *Id.*  In his eviction complaint, Aber alleged that Chavez had violated the rental agreement by "[k]eeping a potentially dangerous dog (a pit bull-full blood) at the [Duplex]."  *See* Citation – Forcible Entry and Detainer 5 ("First Eviction Complaint"), Compl. Ex. 4, ECF No. 1-6.  After a trial, a Justice of the Peace ruled against Chavez.  Compl. 8.

On October 17, 2012, Chavez again sent Aber a request to keep Chato on the premises. *Id.*; *see also* Letter from Att'y Veronica Carbajal to Dick Aber (Oct. 17, 2012) ("Second Accommodation Request"), Compl. Ex. 5, ECF No. 1-7.  In support of her Second Accommodation Request, Chavez attached a copy of a letter from a veterinarian stating that upon examination, Chato had shown no signs of aggression.  *See* Second Accommodation Req. 7.  Aber subsequently denied the Second Accommodation Request, stating that "[t]he problem with [Chavez's Second Accommodation Request] is that she has chosen to get a pit bull [and] [t]hat choice of dog is completely unacceptable."  *See* Letter from Att'y Robert Hedicke to Att'y Veronica Carbajal (Oct. 19, 2012) ("Second Accommodation Denial"), Compl. Ex. 6, ECF No. 1-8.  Instead, Aber presented Chavez with three options: (1) Chavez could find other housing which would allow pets, (2) Chavez could choose a dog of a breed acceptable to Aber, or (3) Chavez could propose a pet that does not run loose in the yard.  *Id.*

A week later, on October 25, 2012, a canine behaviorist evaluated Chato's temperament and concluded that Chato exhibited no indications of "aggression, fear, or lack of socialization issues." *See* Canine Behavior Servs. Temperament Evaluation Report 4 ("Behavioral Report"), Compl. Ex. 7, ECF No. 1-9. The canine behaviorist further noted that Chato displayed "very good social skills with people, and another dog, before, during, and after the exam." *Id*. Thereafter, on November 2, 2012, Chavez filed a fair housing complaint with the Department of Housing and Urban Development ("HUD"). *See* Hous. Discrimination Compl. ("HUD Complaint"), Compl. Ex. 8, ECF No. 1-10. The HUD Complaint was later forwarded to the Texas Workforce Commission Civil Rights Division ("TWCCRD"). Compl. 9.

Chavez returned Chato to the Duplex on November 6, 2012. *Id*. Despite Chato's return, M.C. continued to exhibit worry, fear, anxiety, and stress that Aber would remove or otherwise harm Chato when the dog was outside or left alone in the Duplex. *Id*. at 9-10. On January 5, 2013, Aber contacted the City of El Paso's Animal Control Services to report that Chato was not confined. *Id*. at 11. Though an Animal Control officer responded to the call, Chavez did not receive a citation after showing that Chato was vaccinated, registered, and micro chipped. *Id*.

On January 25, 2013, Aber sent Chavez a proposed lease renewal and lease addendum. *See* Letter from Dick Aber to Yvonne Chavez (Jan. 25, 2013) ("Proposed Lease"), Compl. Ex. 10 at 4-12, ECF No. 1-12. The Proposed Lease would last for one year and included a rent increase from $550.00 to $750.00, a pet deposit for M.C.'s support animal, and a provision that Chato was not allowed to use the Duplex's shared yard. *Id*. at 4, 7-8. Aber told Chavez that if she did not sign the Proposed Lease he would terminate Chavez's tenancy on February 28, 2013. *See* Letter from Att'y Robert Hedicke to Att'y Veronica Carbajal (Jan. 28, 2013), Compl. Ex. 10

at 3, ECF No. 1-12.  Chavez refused to sign and informed Aber that the Proposed Lease violated

both the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq., and the Texas Property Code

because (1) other tenants paid no more than $600.00 in rent for units of comparable size, (2) the

FHA does not permit pet deposits for emotional support animals, and (3) Aber sought to impose

stricter rules regarding M.C.'s emotional support animal than Aber imposed on other tenants'

dogs.  *See* Letter from Att'y Veronica Carbajal to Att'y Robert Hedicke (Jan. 29, 2013), Compl.

Ex. 11, ECF No. 1-13.

On January 29, 2013, Aber again contacted the City of El Paso Animal Control Services

to report that Chato was not confined.  Compl. 11.  On this occasion, Chavez received a citation.

*Id*.  A week and a half later, on or around February 9, 2013, Aber installed a fence to divide the

yard Chavez shared with her next door neighbor.  *Id*.  The fence was comparable to fences in the

yards of the duplexes next to Chavez's unit.  *Id*.

Chavez later withdrew her administrative complaint with the TWCCRD on March 28,

2013, in order to pursue a federal complaint.  *See* Letter from Yvonne Chavez to TWCCRD

(Mar. 28, 2013), Compl. Ex. 12, ECF No. 1-14.

On July 10 and 17, 2013, Chavez requested repairs related to water damage in the

Duplex.  *See* Letter from Att'y Veronica Carbajal to Att'y Stewart Forbes (July 10, 2013),

Compl. Ex. 13, ECF No. 1-15; Letter from Att'y Veronica Carbajal to Att'y Stewart Forbes (July

17, 2013), Compl. Ex. 14, ECF No. 1-16.  City of El Paso building inspectors then inspected the

Duplex and gave Aber a deadline to make repairs.  Compl. 11.  Despite no finding by the City of

El Paso inspectors that the Duplex was uninhabitable, on August 1, 2013, Aber sent Chavez a

thirty-day termination notice to vacate in order "to allow the landlord to perform essential repairs

upon the premises, and make the apartment tenable." *See* Letter from Dick Aber to Yvonne Chavez (Aug. 1, 2013) ("Second Notice to Vacate"), Compl. Ex. 15, ECF No. 1-17.  When Chavez did not vacate, Aber sent Chavez a three-day notice to vacate on September 4, 2013.  *See* Notice to Vacate ("Third Notice to Vacate"), Compl. Ex. 16, ECF No. 1-18.  Aber then filed a second eviction proceeding against Chavez on September 16, 2013.  *See* Eviction Compl. ("Second Eviction Complaint"), Compl. Ex. 17, ECF No. 1-19.  As a result, on October 1, 2013, Justice of the Peace Bruce King signed a judgment against Chavez, returning possession of the Duplex to Aber.  Compl. 12.  Chavez appealed the decision, and, as of the date of the filing of the Complaint, her appeal from the order of eviction remains pending.  *Id.*

Because Aber's "relentless hostility and harassment" resulted in "negative effects to M.C.'s mental health," Chavez moved to a new rental property on December 20, 2013, thereby facing an increased rent from $550.00 to $780.00 per month.  *Id.*

Plaintiffs subsequently filed the Case on March 12, 2015, asserting causes of action against Defendants for (1) housing discrimination under the FHA, (2) unlawful retaliation under the FHA, (3) discrimination under the Texas Fair Housing Act ("TFHA"), and (4) unlawful retaliation under § 92.331 of the Texas Property Code.  *Id.* at 15-17.  On April 14, 2015, Defendants filed the Motion, seeking dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Mot.  Plaintiffs filed their response to the Motion on May 7, 2013.  *See* Pls.' Resp. to Defs.' First Am. Mot. to Dismiss Under F.R.C.P. 12(b)(6) ("Response"), ECF No. 13.  Defendants filed a reply on May 13, 2015.  *See* Defs.' Reply to Pls.' Resp. to Defs.' First Am. Mot. to Dismiss ("Reply"), ECF No. 19.

## II.     DISCUSSION

### A.     Standard

Federal courts are courts of limited jurisdiction.   *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005);  *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).  Without jurisdiction conferred by statute or the Constitution,  federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336.  A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).  The party asserting jurisdiction constantly bears the burden of proof that the jurisdiction does in fact exist.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998).

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need

not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.     Analysis

Because a federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge, the Court first considers Defendants' arguments under Rule 12(b)(1) before turning to Defendants' grounds for dismissal under Rule 12(b)(6). *See Moran*, 27 F.3d at 172.

### 1.      Subject matter jurisdiction

Defendants argue that the Court should dismiss the Case under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs' claims are moot and Chavez lacks standing to bring individual claims.  *See* Mot. 16, 24-25.  The Court addresses each of Defendants' arguments below.

### a.      Plaintiffs' claims are not moot

Defendants argue that because "[a]n offer of complete relief will generally moot a [p]laintiff's claim," the construction of the fence in front of the Duplex mooted Plaintiffs' claims by providing Plaintiffs with "exactly the relief [Chavez] requested on behalf of [M.C.]."  *See* Mot. 24-25.  Plaintiffs respond by asserting that Defendants' argument that the fence was "exactly the relief requested" relies on facts not pleaded in the Complaint.  Resp. 13.  Further, Plaintiffs assert they have "alleged live controversies in which Plaintiffs continue to have a personal stake."  *Id.*

"Even when a plaintiff has standing at the outset, '[t]here must be a case or controversy through all stages of a case."  *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)).  "A case becomes moot – and therefore no longer a [c]ase or [c]ontroversy for purposes of Article III – when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, --- U.S. ----, 133 S. Ct. 721, 726 (2013) (internal quotations and citations omitted). Nonetheless, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Knox v. Serv. Emp. Int'l Union, Local 1000*, --- U.S. ----, 132 S.Ct. 2277, 2287 (2012) (internal citations and quotations omitted).  "[A]s long as the

parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 442 (1984); *see also Knox*, 132 S.Ct. at 2287.

In their Complaint, Plaintiffs seek a declaratory judgment, actual damages to "compensate for [Plaintiffs'] out-of-pocket expenses," "damages for intangible injuries including embarrassment, humiliation, and emotional distress," punitive damages, and attorney's fees. *See* Compl. 18-19. Because granting these damages would afford effectual relief to Plaintiffs, Plaintiffs' claims for relief are not moot. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09 (2001) ("[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case."); *see also Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 (5th Cir. 2009) ("This court and others have consistently held that a claim for nominal damages avoids mootness."). Nor does Aber's February 9, 2013, construction of the fence render Plaintiffs' claims moot. At no point in the Complaint do Plaintiffs assert that they ever sought construction of a fence at the Duplex, *see generally* Compl., and Defendants have presented no explanation as to how the Complaint or any of Plaintiffs' supporting documentation indicates that the fence was ever "exactly the relief [Chavez] requested on behalf of [M.C.]," as Defendants contend. *See* Mot. 25. Accordingly, the Court finds that Plaintiffs' claims are not moot.

### b. **Chavez has standing to bring her individual FHA claims**

Defendants argue that Chavez "has no standing to bring any claim made the basis of this suit and all claims made by [Chavez], [i]ndividually should be dismissed." Mot. 6. Chavez

responds that she has alleged sufficiently "distinct and palpable injuries" to establish individual standing to sue. Resp. 12.

"The FHA affords a private cause of action to any 'aggrieved person.'" *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (quoting 42 U.S.C. § 3613(a)(1)(A)). An "'[a]ggrieved person' includes any person who . . . (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. §§ 3602(i)(1)-(2); *see also Case*, 340 F.3d at 289. "[T]he sole requirement for standing under [the FHA] is the Article III minima of injury in fact." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). A plaintiff satisfies the injury in fact requirement if there is a "distinct and palpable injury fairly traceable to the challenged action." *See L&F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 400 (5th Cir. 2013) (citing *Havens Realty*, 455 U.S. at 375-76).

Chavez has alleged that her personal "damages include, but are not limited to actual damages in the form of out-of-pocket expenses," which Chavez states include "the monthly rent increase from $550.00 to $780.00 resulting from Defendants' refusal to provide a reasonable accommodation to M.C., and the subsequent harassment of M.C.'s family that ultimately forced them to find a new rental home." Compl. 15. These costs of moving, "which [Chavez] attribute[s] to [Aber's] alleged discrimination against [her] child[], are 'distinct and palpable injuries' that affected [Chavez] personally, rather than as 'next friend[]' of [M.C.]." *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 544 (6th Cir. 2014) (holding that parents' out-of-pocket expenses incurred in moving to a new residence as a result of housing discrimination

12

against their disabled children are sufficiently "distinct and palpable" injuries to grant those parents standing to file personal claims under the FHA).

Accordingly, "[b]ecause [Chavez's] pecuniary injuries were allegedly caused by [Defendants] and would be redressed by an award of damages, [Chavez] ha[s] established Article III standing to bring suit, which is all the FHA requires." *Id.* at 545.

### 2.    Defendants' grounds for dismissal for failure to state a claim

Having determined that the Court has subject matter jurisdiction over the Case, the Court now turns to Defendants' arguments in support of dismissal under Rule 12(b)(6). Defendants argue that the Court should dismiss the Case under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a plausible claim for relief (1) against Aber individually,[4] (2) under §§ 3604(f)(1), (f)(2), and (f)(3)(B) of the FHA, (3) under § 3617 of the FHA, (4) under the TFHA, and (5) under § 92.331 of the Texas Property Code. *See* Mot. 14-24. The Court addresses each of Defendants' arguments below.

#### a.    Plaintiffs sufficiently pleaded a plausible claim against Aber

Defendants argue that Plaintiffs have failed to state a plausible claim against Aber because there is no "reasonable basis for predicting that the law might impose liability on the facts involved." Mot. 23. Specifically, Defendants assert that "[n]o claims are asserted against [Aber] in his individual capacity, as all acts were for the benefit of and on behalf of Fairview." *Id.* at 23-24. Plaintiffs respond that they have sufficiently pleaded a claim against Aber because

---

[4] Defendants argue that Plaintiffs "improperly joined" Aber and further cite to law regarding "fraudulent joinder" in support of their Motion. *See* Mot. 5, 13. Claims for improper and fraudulent joinder are usually associated with a plaintiff's motion to remand. *See African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014). Nonetheless, for the purposes of this Order, the Court construes Defendants' challenge to the claims against Aber as an assertion that Plaintiffs have failed to state a claim for relief against Aber pursuant to Federal Rule of Civil Procedure 12(b)(6).

"[e]mployees can be held individually liable [under the FHA] for the discriminatory acts they engage in while employed." Resp. 26.

"An action [under the FHA] is essentially an action in tort." *See Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979). Under principals of agency law, "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." *Id.* (citing Restatement (Second) of Agency § 411 (1958)); *see also Fair Hous. Res. Ctr., Inc. v. DJM's 4 Reasons Ltd.*, 499 F. App'x 414, 416 (6th Cir. 2012) (finding that "prohibitions of [FHA] applied to [defendant] individually as well as to his company"). As a result, "an agent who assists his principal in committing a [violation of the FHA] is himself liable as a joint tortfeasor." *Dillon*, 597 F.2d at 562; *see also Miller v. 270 Empire Realty LLC*, No. 09-CV-2857 (RJD)(RER), 2012 WL 1933798, at *5 (E.D.N.Y. Apr. 6, 2012) ("If [apartment superintendent] refused to perform repairs on the apartment because of [plaintiff's] disability, whether or not under direction from the [corporate owners], he too can be held liable for violating the FHA."); *Weisman v. Hill*, 629 F. Supp. 2d 106, 112 (D. Mass. 2009) (finding sufficient allegations to state claim for individual liability of apartment manager for disability discrimination under the FHA).

Here, Plaintiffs make several assertions that Aber assisted Fairview in the allegedly discriminatory conduct at issue. According to Plaintiffs, Aber "verbally asked [Chavez] to get rid of [Chato]," "delivered a notice to vacate," "threatened to have Animal Control remove" Chato from the premises, and "verbally denied" the First Accommodation Request. *See* Compl. 6-7. Indeed, Aber takes a direct, personal, and prominent role in each of Plaintiffs' allegations of discriminatory conduct. *See id.* at 8 (alleging "Aber filed an eviction complaint" and "denied the

14

reasonable accommodation request"), 10 (alleging "Aber sent" Chavez a lease containing discriminatory terms), 12 (alleging "Aber's relentless hostility and harassment has had a negative impact on M.C.'s mental health"). Accordingly, Aber could be held individually liable under the FHA for his own discriminatory conduct. *See Dillon*, 597 F.2d at 562.

Defendants argue that Aber cannot be individually liable because the FHA "imposes liability upon the corporation for the acts of its officers or owners, not the other way around." *See* Mot. 23 (citing 42 U.S.C. § 3601; *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). Defendants' assertion, however, finds no support in the law, and, indeed, courts across the country have routinely imposed individual liability for discriminatory actions under the FHA. *See, e.g., Fair Hous. Res. Ctr.*, 499 F. App'x at 416 (finding "prohibitions of [FHA] § 3604(c) applied to [defendant] individually as well as to his company"); *Dillon*, 597 F.2d at 562 (holding vice-president and sole shareholder of corporation individually liable for his personal discriminatory actions); *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227 (W.D. Wash. 2012) ("[C]ourts have found that directors who participate in, authorize, or ratify the commission of a civil rights or fair housing tort may be held individually liable."); *United States v. Luebke*, 757 F. Supp. 2d 828, 834 (E.D. Wis. 2010) (finding "[employee] can be individually liable for the acts she engaged in while employed for" management company).

Nor does Defendants' reliance on the United States Supreme Court's decision in *Meyer v. Holley*, 537 U.S. 280 (2003) require a finding for Defendants on this issue. In *Meyer*, the Supreme Court considered the issue of "whether the [FHA] imposes personal liability without fault upon an officer or owner of a residential real estate corporation for the unlawful activity of the *corporation's* employee or agent." 537 U.S. at 282. Specifically, a salesman for Triad, Inc.

15

prevented an interracial couple from purchasing a house for racially discriminatory reasons. *Id.* at 283. The couple later filed suit against, *inter alia*, Triad's president, sole shareholder, and licensed "officer/broker" – David Meyer – claiming that Meyer was "vicariously liable in one or more of these capacities" for the salesman's unlawful actions. *Id.* The Supreme Court rejected the plaintiffs' vicarious liability claim, finding that the FHA does not "hold every corporate supervisor personally liable without fault for the unlawful act of every corporate employee whom he or she has the right to supervise." *Id.* at 290. The decision in *Meyer*, however, in no way stands for the proposition that the FHA does not impose personal liability on a corporate officer *with fault* for that officer's *own* unlawful conduct, as is the issue in the present Case. Accordingly, *Meyer* is distinguishable, and is not controlling.

Therefore, the Court finds that because Plaintiffs claim that Aber personally assisted Fairview in the alleged discriminatory conduct, Plaintiffs have pleaded a plausible claim for relief against Aber individually under the FHA. *See Fair Hous. Res. Ctr.,* 499 F. App'x at 416; *Dillon,* 597 F.2d at 562.

> **b.    Plaintiffs have sufficiently pleaded a plausible claim of housing discrimination under 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B)**

Defendants argue that Plaintiffs have failed to state a claim for discrimination under 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(B) because Defendants (1) did not know nor should they have known that M.C. was disabled, (2) Plaintiffs' request to keep Chato was not a reasonable accommodation, and (3) Defendants never refused to make a reasonable accommodation. *See* Mot. 15-16. Plaintiffs respond that Defendants' grounds for dismissal under 12(b)(6) "do not attack the factual sufficiency of the [Complaint]," and instead "focus on the merits of the case."

16

Resp. 13.  Plaintiffs further assert that they have "plead[ed] sufficient facts to state a claim for relief that is plausible on its face."  *Id.*

Section 3604 of the FHA prohibits discrimination concerning the sale, rental, and financing of housing based on disability.  *See* 42 U.S.C. § 3604; *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995).  Under § 3604(f)(1) it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[5] of (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that buyer or renter."  42 U.S.C. § 3604(f)(1)(A); *see also City of Edmonds*, 514 U.S. at 729.  The FHA further prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or (B) a person residing or intending to reside in that dwelling after it is so sold, rented or made available; or (C) any person associated with that person."  42 U.S.C. § 3604(f)(2); *see also Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 200 n.9 (5th Cir. 2000).  "For the purposes of [§ 3604], discrimination includes . . . a refusal to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); *see also City of Edmonds*, 514 U.S. at 729.

Here, Plaintiffs assert that Defendants' acts "constitute[d] a refusal to make accommodations in rules, policies, practices, or services . . . in violation of [§] 3604(f)(3)(B)."

---

[5] Though the FHA uses the term "handicap" rather than disability, *see* 42 U.S.C. § 3604(f), Plaintiffs in this case, along with scholars of disability studies, prefer the term "disability."  *See Bhogaita v. Altamonte Heights Condo. Ass'n Inc.*, 765 F.3d 1277, 1285 n.2. (11th Cir. 2014).  The Court, therefore, treats these terms interchangeably and, unless quoting the statute or case law, uses the term "disability."

Compl. 16.  "To prevail on a claim under [§ 3604(f)(3)(B)], a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the disability; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation."  *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *accord Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011).

Defendants have not alleged that Plaintiffs inadequately pleaded either that M.C. is a person with a disability or that the requested accommodation was necessary to afford M.C. an equal opportunity to use and enjoy the Duplex.  Instead, Defendants argue that Plaintiffs have not adequately pleaded the second, fourth, or fifth elements of a claim under § 3604(f)(3)(B).  *See* Mot. 15-16.  The Court addresses each of Defendants' arguments below.

### i.      Plaintiffs sufficiently pleaded that Defendants had knowledge of M.C.'s disability

Defendants argue that Plaintiffs have failed to state a cause of action under the FHA because "[a]t the time [Fairview] filed the first eviction suit, it had absolutely no knowledge of Plaintiffs' alleged [disability] nor was there any reason for Defendant[s] to have known of this fact."  *See* Mot. 16.  Plaintiffs respond that the facts alleged in the Complaint indicate that Plaintiffs "notified Defendants that M.C. was a person with disabilities twice before the first eviction was filed."  Resp. 15.

In the Complaint, Plaintiffs alleged that "in September 2012," after "Aber verbally asked [Chavez] to get rid of [Chato][,] . . . Chavez explained that [Chato] was necessary because M.C.

18

is a person with disabilities." *See* Compl. 6. Plaintiffs further claim that Chavez sent Aber the Support Letters, which further explained M.C.'s medical needs, shortly after Aber delivered the First Notice to Vacate. *See id.* at 7. Indeed, according to Plaintiffs' allegations, it was not until *after* Aber "verbally denied [this] reasonable accommodation request," that Aber filed the First Eviction Complaint on September 24, 2012. *Id.* at 7-8. Though Plaintiffs do not expressly plead the date that Chavez explained M.C.'s disabilities to Aber, or the date Chavez sent the Support Letters to Aber, in considering a 12(b)(6) motion to dismiss the Court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Calhoun*, 312 F.3d at 733. In doing so, it is clear that the facts alleged in the Complaint sufficiently indicate that Aber "knew or should reasonably be expected to [have] know[n] of the [disability]" since at least September 14, 2012 – ten days prior to the First Eviction Complaint, and months prior to other alleged discriminatory actions. *See DuBois*, 453 F.3d at 1179.

Accordingly, the Court finds that Plaintiffs have sufficiently pleaded that Defendants knew, or should reasonably be expected to have known, of M.C.'s disability prior to Defendants' allegedly discriminatory conduct.[6]

### ii.   Plaintiffs sufficiently pleaded that the requested accommodation was reasonable

Defendants further argue that "Plaintiffs' request for the pit bull to remain on the premises as an accommodation was not reasonable." Mot. 19. Specifically, Defendants argue that "the request caused an undue burden on Defendant[s] due to the danger to others, including

---

[6] Defendants further argue that because Chavez "made no complaint or mention of any need for an emotional support animal" at the eviction hearing, "[t]he hearing and subsequent judgment in favor of [Fairview] cannot be considered as evidence of discrimination." Mot. 16. Because the Court has already found that Plaintiffs sufficiently pleaded that Defendants had knowledge of M.C.'s disability prior to the filing of the eviction case that led to the hearing, it flows naturally that Defendants also had knowledge of the disability at the time of the subsequent eviction hearing.

tenants and third parties, for which [Fairview] would be held legally responsible" and that the requested accommodation would further "fundamentally alter[] the nature of Defendants['] operations by reconfiguring and altering the common area used by all tenants." *Id.* at 20. Plaintiffs respond that the "request [for accommodation] was reasonable because Defendants cannot reject a support animal that is a pit bull based only on the dog's breed." Resp. 18.

"The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). "The question of whether an accommodation is reasonable is a question of fact 'determined by a close examination of the particular circumstances.'" *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 810 (N.D. Ill. 2011) (quoting *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996)).

Plaintiffs allege that their requested accommodation consisted of keeping Chato as an emotional support animal to address M.C.'s disabilities. *See* Compl. 1-2, 5-14. "[S]ervice dogs are a common example of a reasonable accommodation for people with disabilities." *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 731 n.8 (S.D. Tex. 2010). "In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1257 (D. Haw. 2003); *accord Bronk*, 54 F.3d at 429 ("Balanced against a landlord's economic or aesthetic concerns as expressed in a no-pets policy, a deaf individual's need for the accommodation afforded by a hearing dog is . . . *per se* reasonable.").

Defendants argue, however, that because Chato is part pit bull, "[a]s a matter of law, it is not a reasonable accommodation to keep [such] a dangerous dog on the premises." Reply 4. In support of this argument Defendants cite to an April 23, 2013, HUD notice stating that landlords may deny a requested accommodation where "the specific assistance animal in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation." *See* U.S. Dep't of Hous. & Urban Dev., FHEO-2310-01, Service Animals and Assistance Animals for People with Disabilities in Hous. and HUD-Funded Programs 3 (Apr. 25, 2013) ("HUD Notice"). "[D]etermining whether [Chato] poses a direct threat that cannot be mitigated by another reasonable accommodation is not a question of law, [but] is distinctly a question of fact." *See Warren v. Delvista Towers Condo. Ass'n, Inc.*, 49 F. Supp. 3d 1082, 1088 (S.D. Fla. 2014). Plaintiffs have pleaded that a veterinarian found that Chato "did not show signs of aggression." Compl. 8. Further, Plaintiffs claim that "a canine behaviorist" concluded that Chato exhibited a "calm manner that is indicative of a dog with no aggression, fear or lack of socialization issues." *Id.* at 9. Accordingly, the Court finds that Plaintiffs have alleged sufficient facts that Chato did not pose a direct threat, and, therefore, allowing Chato to remain on the premises was a potentially reasonable accommodation. *See Petty*, 702 F. Supp. 2d at 731 n.8; *Prindable*, 304 F.Supp. 2d at 1257; *Bronk*, 54 F.3d at 429; HUD Notice 3.[7]

---

[7] The Court further notes that the April 25, 2013, HUD notice states that "[b]reed, size, and weight limitations may not be applied to an assistance animal." *See* HUD Notice 3. Accordingly, it appears that the mere fact that Chato is a mixed breed pit bull is not alone sufficient under the HUD Notice to establish that Chato is per se unreasonable as an accommodating support animal. *See Warren v. Delvista Towers Condo. Ass'n, Inc.*, 49 F. Supp. 3d 1082, 1089 (S.D. Fla. 2014) (finding that denying disabled person the assistance of a support animal merely because the dog was a pit bull violated the FHA).

###### iii.   Plaintiffs sufficiently pleaded that Defendants refused to make the requested accommodation

Defendants assert that Plaintiffs have failed to sufficiently allege that Defendants refused to make the requested accommodation because Chavez "received an immediate response which proposed different resolutions, all of which included [M.C.] keeping a pet." *See* Mot. 16. Plaintiffs respond by citing a number of factual allegations in the Complaint that they contend establish that Defendants denied the accommodation request. *See* Resp. 20-22. Defendants reply that nonetheless "there can be no FHA violation [because] Plaintiffs actually kept [Chato] while Fairview was attempting to engage [Chavez] in the interactive process." Reply 6.

Under the FHA, a landlord may not refuse "to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." *See City of Edmonds*, 514 U.S. at 729. "[D]enial can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial." *Groome Res.*, 234 F.3d at 199. Accordingly, "a housing provider that refuses to make a decision . . . could be found to have constructively denied the request by 'stonewalling' and short-circuiting the [interactive] process." *See Overlook Mut.*, 415 F. App'x at 621. Further, "injury may result when a housing provider unreasonably delays responding to a request for accommodation and . . . such delay may amount to a denial." *Id.* at 622; *see also Sabal Palm Condo. of Pine Island Right Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014) ("[C]ontinuing to delay for months and asking for even more information amounts to a constructive denial.").

As an initial matter, the Court notes that Plaintiffs have expressly pleaded that Defendants directly denied their accommodation requests on at least two occasions. Plaintiffs

assert that "Aber verbally denied" the First Accommodation Request. Compl. 7. They further assert that in relation to the Second Accommodation Request, Aber allegedly stated that accommodating Chato was "completely unacceptable," and refused to consider any option that included Chato remaining at the Duplex. *See id.* at 8; Second Accommodation Denial 2. Accepting these facts as true, and viewing them in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately pleaded that Defendants directly denied Plaintiffs' accommodation requests. This is alone sufficient to overcome Defendants' 12(b)(6) challenge. *See DuBois*, 453 F.3d at 1179; *see also Calhoun*, 312 F.3d at 733.

Defendants' argument that there could be no denial because Defendants were engaging Plaintiffs in an interactive process is unpersuasive. Plaintiffs allege that they initially requested the accommodation in September 2012. *See* Compl. 6. In response, according to Plaintiffs, for over a year following the request Aber engaged in a campaign of "relentless hostility and harassment," including two actions to evict Plaintiffs from the Duplex and twice calling Animal Control Services. *See id.* at 8, 11-12; First Eviction Compl.; Second Eviction Compl.; First Notice to Vacate; Second Notice to Vacate; Third Notice to Vacate. Aber further allegedly stated that Chato was "completely unacceptable" and offered Plaintiff only three options, none of which included keeping Chato at the Duplex. *See* Compl. 8; Second Accommodation Denial. As a result, on December 20, 2013, over a year after the initial accommodation request, Chavez moved to new housing because of "Aber's renewed efforts to evict the Chavez family" and resulting "negative effects to M.C.'s mental health." Compl. 12. Therefore, even if Aber did not expressly deny the accommodation request, which, as stated above, the Court finds that Plaintiffs have alleged he in fact did, the Court would nonetheless find sufficient facts that Aber

23

"constructively denied the request by . . . short-circuiting the [interactive] process." *See Overlook Mut.*, 415 F. App'x at 621; *see also Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (holding that landlord's failure to make a decision on whether to accommodate emotional support animal for over six months constituted a constructive denial); *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 69 (1st Cir. 2010) (finding condominium board of directors constructively denied accommodation request, despite offers to grant an accommodation, where "the circumstances permit[ted] a reasonable inference that [the board] effectively short-circuited the interactive process"); *Petty*, 702 F. Supp. 2d at 731 (finding that landlord failed to grant reasonable accommodation despite constructing fence because the fence "steer[ed] the service animal away from the common areas outside the building"). *Cf. Overlook Mut.*, 415 F. App'x at 623 (finding no constructive denial where animal "allowed to stay with the family" *and* tenants "were never required to leave their home or otherwise punished for [pet's] presence").

Accordingly, the Court finds that Plaintiffs have sufficiently pleaded that Defendants refused "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations [were] necessary to afford [M.C.] equal opportunity to use and enjoy [the Duplex]." *See* 42 U.S.C. § 3604(f)(3)(B); *see also Overlook Mut.*, 415 F. App'x at 621.

In light of the above, the Court finds that Plaintiffs adequately pleaded the elements of a claim for housing discrimination under the FHA because Plaintiffs have sufficiently alleged that Defendants knew of M.C.'s disability, that Plaintiffs' requested accommodation was reasonable, and that Defendants refused to make the requested accommodation. Therefore, Plaintiffs have asserted a sufficiently plausible claim for housing discrimination under 42 U.S.C. §

24

3604(f)(3)(B) to survive Defendants' Rule 12(b)(6) challenge.  *See DuBois*, 453 F.3d at 1179;

*Twombly*, 550 U.S. at 555, 570.

> **c.      Plaintiffs sufficiently pleaded a claim for retaliation under 42 U.S.C. § 3617**

Defendants argue that Plaintiffs have not stated a claim for retaliation under 42 U.S.C. §

3617 because "no evidence set forth in this case indicates that anyone intimidated or coerced

[Chavez] because she asked to be able to keep a pit bull dog and claimed it was for [M.C.'s]

emotional well-being."  Mot. 21.  Plaintiffs respond by citing to a number of factual allegations

in the Complaint that they claim sufficiently support a claim for relief under § 3617.  Resp. 22-

24.

Under § 3617 of the FHA, it is "unlawful to coerce, intimidate, threaten, or interfere with

any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or

on account of his having aided or encouraged any other person in the exercise or enjoyment of,

any right granted or protected by . . . [§] 3604 [of the FHA]."  42 U.S.C. § 3617; *see also Evans

v. Tubbe*, 657 F.2d 661, 663 n.3 (5th Cir. 1981).  "Retaliation claims brought pursuant to [§

3617] are analyzed under the same standards that are applied to retaliation claims brought under

Title VII and other employment discrimination statutes."  *Texas v. Crest Asset Mgmt., Inc.*, 85 F.

Supp. 2d 722, 733 (S.D. Tex. 2000) (citing *Caractor v. Town of Hempstead*, 159 F.3d 1345,

1998 WL 536385, at *2 (2d Cir. June 11, 1998)).  Accordingly, to state a claim for retaliation, a

plaintiff must demonstrate that "(1) he engaged in an activity that [the FHA] protects; (2) he was

subjected to an adverse [action by the defendant]; and (3) a causal connection exists between the

protected activity and the adverse . . . action."  *Cox v. Phase III, Invs.*, 2013 WL 3110218, at *10

(S.D. Tex. June 14, 2013) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388

(5th Cir. 2007) (discussing requirements to assert a claim for retaliation under Title VII)); *see also Scruggs v. Marshall Hous. Auth.*, No. 00-40216, 2000 WL 1273473, at *2 (5th Cir. Aug. 23, 2000) (discussing requirements to assert a claim for retaliation under the FHA).[8] "Protected activities [under the FHA] include the request for a reasonable accommodation for handicapped persons." *Donovan v. Woodbridge Maint. Ass'n*, No. 2:14-cv-00995 JAM-EFB, 2015 WL 1241020, at *4 (E.D. Cal. Mar. 17, 2015) (internal citations omitted); *see also Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595, 2015 WL 685194, at *12 (S.D.N.Y. Feb. 17, 2015) ("[A] request for a reasonable accommodation is [a] protected activity under the FHA.") (internal quotation marks omitted).

Here, Plaintiffs have alleged that they engaged in a protected activity by requesting an accommodation to the Duplex's "no pets" policy in order to keep an emotional support animal for M.C.'s disabilities. *See* Compl. 6; *Donovan*, 2015 WL 1241020, at *4. Plaintiffs have further asserted that Defendants responded to the accommodation request by engaging in "relentless hostility and harassment" against Plaintiffs, including filing suits for eviction, calling the Animal Control Services, and refusing to offer Plaintiffs a renewed lease on terms similar to non-disabled tenants in the complex. Threats and intimidation after plaintiff filed a complaint of housing discrimination is "direct evidence of retaliation in violation of the FHA." *Crest Asset Mgmt.*, 85 F. Supp. 2d at 733. Accordingly, Plaintiffs have sufficiently alleged an "adverse action" under § 3617. *See id.*

---

[8] Though "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss," *see Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013), because the Court finds that Plaintiffs have alleged sufficient facts that, if true, would meet this heightened standard, Plaintiffs' allegations are more than enough to survive Defendants' Rule 12(b)(6) challenge. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 510-12 (2002) (noting that the *McDonnell Douglas* prima facie case is a heightened evidentiary standard compared to the pleading requirements of Federal Rule of Civil Procedure 8).

Further, as alleged in the Complaint, Aber began his campaign of harassment immediately after Plaintiffs requested the accommodation. Specifically, Plaintiffs allege that they first requested the accommodation in September 2012. Compl. 6. Thereafter, on September 14, 2012, Aber delivered a notice to vacate the Duplex. *Id.* at 7. On the same day, Aber "threatened to have Animal Control remove [Chato] and that he would evict the family if [Chato] was not removed." *Id.* Less than two weeks later, on September 24, 2012, Aber filed the First Eviction Complaint. *Id.* at 8. As alleged, "[i]t was only after [Chavez] adopted Chato for M.C., that Defendants began [these] eviction proceedings." *Id.* at 13. This close temporal proximity between Plaintiffs' request for the accommodation and Defendants' retaliatory behavior is sufficient to state that a causal connection exists between the protected activity and the adverse action. *See Cox*, 2013 WL 3110218, at * 10 (citations omitted); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation [under Title VII].")); *Crest Asset Mgmt.*, 85 F. Supp. 2d at 733 ("Retaliation claims brought pursuant [to § 3617] are analyzed under the same standards that are applied to retaliation claims brought under Title VII.").

Defendants attempt to undermine this conclusion by asserting that "once Defendants knew about the alleged [disability], they dismissed the eviction case and went out of their way to accommodate [M.C.] by offering many different alternatives." Mot. 21. In considering a motion to dismiss under Rule 12(b)(6), however, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun*, 312 F.3d at 733. Here, as stated above, Plaintiffs pleaded that shortly after requesting an accommodation for M.C.'s disability,

Aber began a campaign of "relentless hostility and harassment" by filing at least two eviction proceedings, calling Animal Control Services on two occasions, and refusing to renew Plaintiffs' lease on non-discriminatory terms. These allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. *See Swanson*, 110 F.3d at 1188; *Donovan*, 2015 WL 1241020, at *4. Defendants' selective reading of the facts in the light most favorable to *Defendants* is unpersuasive to show that Plaintiffs have failed to sufficiently state a claim for retaliation under 42 U.S.C. § 3617.

> **d.** **Plaintiffs sufficiently pleaded a claim for housing discrimination under Texas Property Code §§ 301.025(a), (b), (c)(2)**

Defendants argue that because the TFHA prohibits the same acts as the FHA, Plaintiffs' TFHA claims must fail for the reasons that Defendants assert against Plaintiffs' FHA claims. *See* Mot. 22. Plaintiffs in response likewise rely "on the same allegations as they did for their claims under the [FHA]" to assert that they have pleaded "sufficient facts to support a plausible claim under the [TFHA]." Resp. 24.

The TFHA "provide[s] rights and remedies substantially equivalent to those granted under federal law." Tex. Prop. Code Ann. § 301.002; *see also Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 n.8 (5th Cir. 1996) (recognizing that TFHA is "substantially similar" to FHA); *Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV, 2013 WL 4680392, at *6 (Tex. App. Aug. 29, 2013) (same). Indeed, the language of §§ 301.025(a), 301.025(b), and 301.025(c)(2) of the TFHA is nearly identical to the language of §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B) of the federal FHA. *Compare* Tex. Prop. Code Ann. § 301.025 *with* 42 U.S.C. § 3604(f).

28

Accordingly, for the reasons set forth above in relation to Plaintiffs' claims under §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3), the Court finds that Plaintiffs have asserted sufficient facts to state a plausible claim for relief under §§ 301.025(a), 301.025(b), and 301.025(c)(2) of the TFHA. *See Meadowbriar*, 81 F.3d at 531 n.8; *Richardson*, 2013 WL 4680392, at *6.

### e.   Plaintiffs sufficiently pleaded a claim for retaliation under Texas Property Code § 92.331

Defendants argue that because "no executed lease existed between the parties after 2010 . . . there is no remedy granted to the Plaintiffs by lease and the claim as to [Texas Property Code] § 92.331(a)(1) fails as a matter of law." Mot. 22. Plaintiffs respond that "Chavez has alleged [that] she had a valid lease that expired on December 31, 2012," and "Plaintiffs were thus protected against retaliation after asserting their rights under the [FHA]." Resp. 25.

"Chapter 92 of the Texas Property Code prohibits retaliation by a landlord against a tenant and provides that retaliation is an absolute defense in a suit for eviction." *Dall. Hous. Auth. v. Nelson*, No. 05-13-00818-CV, 2015 WL 1261953, at *3 (Tex. App. Mar. 19, 2015). Under § 92.331 "[a] landlord may not retaliate against a tenant by taking an action described in [§ 92.331(b)] because the tenant . . . in good faith exercises or attempts to exercise against a landlord a right or remedy granted to the tenant by lease, municipal ordinance, or federal or state statute." *See* Tex. Prop. Code Ann. § 92.331(a)(1); *Dall. Hous. Auth.*, 2015 WL 1261953, at *3. Prohibited retaliatory actions include a landlord's decision to file an eviction proceeding. *See* Tex. Prop. Code Ann. § 92.331(b)(1); *Dall. Hous. Auth.*, 2015 WL 1261953, at *3.

Plaintiffs have alleged that Defendants "retaliated after Plaintiffs in good faith exercised or attempted to exercise a right or remedy granted to Plaintiffs as tenants by the [FHA]." *See* Compl. 17. Elsewhere in the Complaint, Plaintiffs pleaded that Chavez presented her First

Accommodation Request in September 2012 and that Aber filed the First Eviction Complaint on September 24, 2012. *See id.* at 6, 8. Reading the facts in the light most favorable to Plaintiffs, *see Calhoun*, 312 F.3d at 733, these allegations sufficiently state a claim that Defendants filed the First Eviction Complaint in retaliation for Plaintiffs' attempted exercise of their rights provided under federal law. Plaintiffs have, therefore, sufficiently pleaded a plausible claim for relief under § 92.331 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 92.331(a)(1); *Dall. Hous. Auth.*, 2015 WL 1261953, at *3.

Defendants' assertion that there was "no remedy granted to the Plaintiffs by lease" because "no executed lease existed between the parties after 2010" is unpersuasive. *See* Mot. 22. As an initial matter, Defendants' claim that there was no lease between the parties after 2010 is directly contradicted by Plaintiffs' express allegations. *See* Compl. 5 (alleging that "Chavez signed three consecutive two-year residential leases with [Aber] . . . [the] last [of which] expired on December 31, 2012"). In reviewing a motion to dismiss under Rule 12(b)(6) the Court must accept the plaintiffs' well-pleaded factual allegations as true. *See Calhoun*, 312 F.3d at 733. Accordingly, the Court finds that Plaintiffs have pleaded that there was a valid lease in force until December 31, 2012.

Further, even to the extent that Defendants argue the January 1, 2010, Lease was not validly executed because it lacks Chavez's signature, Defendants' argument finds no support in the law. "The rule in Texas is, that a contract in writing signed by one party and expressly accepted orally by the other, or the terms thereof performed and the benefits thereof accepted, is in law the written contract of the parties and binding on both." *Rubin v. Polunsky*, 366 S.W.2d 234, 236 (Tex. App. 1963); *see also Hays v. Sullins*, 442 S.W.2d 494, 496 (Tex. App. 1969)

(finding lease signed by only one party binding on second party that had orally accepted the terms). As a result, the fact that Chavez did not sign the January 1, 2010, Lease does not establish its invalidity.

Accordingly, the Court finds that Plaintiffs have adequately alleged a plausible claim that Defendants retaliated against Plaintiffs for attempting to exercise their rights under the federal FHA, thus violating § 92.331 of the Texas Property Code.

## III.    CONCLUSION

For the reasons set forth above, the Motion, ECF No. 8, is **DENIED.**

**IT IS FURTHER ORDERED** that the Original Motion to Dismiss, ECF No. 7, is **DENIED** as moot.[9]

**SO ORDERED.**

**SIGNED this 8th day of August, 2015.**

_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

[9] The Motion was filed one day after Defendants filed their Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof ("Original Motion to Dismiss"), ECF No. 7. By filing the Motion, Defendants merely added a Table of Contents, Table of Authorities, and Statement of the Issues to their briefing without altering their substantive arguments. As a result, the Motion superseded the original motion to dismiss, thereby rendering the original motion to dismiss moot. *See Hutchinson v. Commercial Recovery Sys., Inc.*, Civil Action No. 3:13-CV-1266-D, 2013 WL 2367771, at *1 n.1 (N.D. Tex. May 30, 2013) (denying superseded motion as moot); *Myslicki v. Gage*, No. A-11-CV-635-SS, 2012 WL 728035, at *2 n.1 (W.D. Tex. Mar. 6, 2012) (dismissing superseded motion to dismiss).